IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM PENNEWELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DETECTIVE GRANT, DETECTIVE ) <br> GRAJEWSKI, DETECTIVE SANTOS, and ) <br> DETECTIVE BOTTERBUSCH, ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 09-cv-21 (GMS) |

## **MEMORANDUM**

### I. **INTRODUCTION**

The plaintiff, William H. Pennewell ("Pennewell"),[1] filed a Complaint (D.I. 2.) against New Castle County Police Detectives Brian Grant, Mark Grajewski, Michael Santos, and Matthew Botterbusch (collectively, "the defendants"), on January 9, 2009. Pennewell appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4.) Pennewell's initial Complaint was dismissed, pursuant to 42 U.S.C. §§ 1915 and 1951A, on June 22, 2009, because he failed to state an actionable constitutional claim against any of the defendants. (D.I. 9 at 3.) Pennewell was granted leave to file an amended complaint, and did so on July 16, 2009. (D.I. 10.) In this Amended Complaint, Pennewell alleges that the defendants violated his constitutional rights by using excessive force when they arrested him on January 7, 2009. (Id. at 3, 5.) Pennewell brings this action pursuant to 42 U.S.C. § 1983 and

---

[1] At the time Pennewell filed his Complaint, he was incarcerated at the Howard R. Young Correctional Institution ("HRYCI"), located in Wilmington, Delaware. (D.I. 2.) Pennewell was later transferred to the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, but was released to home confinement on June 29, 2011. (D.I. 46.)

seeks compensatory and punitive damages against the four named officers, as well as an injunction to prevent the occurrence of similar instances. (Id.)

On July 22, 2011, following completion of discovery,[2] the defendants filed a Federal Rule of Civil Procedure 56(c) Motion for Summary Judgment. (D.I. 44.) To date, Pennewell has not filed an Answering Brief in opposition, despite being directed to do so by court order on November 23, 2011. (D.I. 49.) As Pennewell has failed to submit his response within the ten-day period the court provided, or seek an extension of the time period, the court will, as stated in its Order, decide the defendants' motion on the present record. (Id.) For the reasons that follow, the court will grant the defendants' Motion for Summary Judgment.

## II. BACKGROUND

The following facts are taken from Pennewell's Amended Complaint. (D.I. 10.) On the night of January 7, 2009, Pennewell went to the area of 300 Silver Run Trail in Bear, Delaware, after receiving a phone call from a woman requesting that he proceed to that location. (D.I. 10 at 3.) Pennewell states that once he arrived, he observed a "[r]ed caravan going extremely slow." (Id.) He alleges that this vehicle stopped within fifteen feet of him and that two New Castle detectives jumped out of the van and ordered that he "freeze" and "get on the ground." (Id.) Pennewell indicates that he "immediately put [his] hands in the air" and was then surrounded by Detectives Grajewski, who was holding a taser, and Grant, who was holding a black gun. (Id. at 3, 5.)

---

[2] Per the court's Scheduling Order, discovery was set to close on May 10, 2011. (D.I. 21.) Despite this deadline, Pennewell failed to respond to the defendants' interrogatories and requests for production, claiming that he did not have the information available to do so while incarcerated. (D.I. 37 at 1; D.I. 42; D.I. 45 at 7-13.) As a result, the defendants indicate that Pennewell did not provide full and complete interrogatory responses and did not produce any of the requested documents or evidence by the time they filed the instant motion. (D.I. 45 at 1, 4-5.) Moreover, though Pennewell was released from his period of incarceration to home confinement on June 29, 2011, he did not supplement his interrogatory responses or provide the defendants with the requested documents.

2

Pennewell asserts that Detective Grajewski tased him as soon as he put his hands in the air, despite the fact that he did not resist arrest. (Id. at 5.) Pennewell further alleges that, after being tased unconscious, he was "beaten by Det[ective] Grant along with other officers, to near death." (Id. at 5.) As a result of this alleged beating, Pennewell claims that he "sustain[ed] permanent injuries to [his] face, three chipped teeth, and ha[s] mental issues," including persistent nightmares of the incident, which have required medication and treatment. (Id.) Pennewell asserts that each of the four detectives named in the Amended Complaint were involved in causing his injuries and that their actions—presumably, their use of excessive force[3]—violated his constitutional rights under 42 U.S.C. § 1983. (Id. at 3, 5.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 568 n.10 (1986). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The district court, when determining whether a genuine issue of material fact exists, must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that

---

[3] Pennewell does not specifically state that the defendants violated 42 U.S.C. § 1983 by using excessive force during his arrest. (D.I. 10.) Upon review of his Amended Complaint, however, it appears to the court that Pennewell bases his action on an excessive force claim, as the substance of his allegations assert that the defendants "beat" him to "near death" in the course of an arrest he alleges he did not resist. (Id. at 3, 5.)

3

there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

The mere existence of some evidence in support of the nonmoving party will not, however, prove sufficient for denial of a summary judgment motion. *See Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* To this end, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations[,] or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

As noted, the court is aware that Pennewell did not file an opposition to the defendants' Motion for Summary Judgment. The court, mindful of this fact and in keeping with Third Circuit precedent, will not grant the entry of summary judgment simply because the motion is unopposed, but rather evaluates the merits of the defendants' motion in light of the pleadings and submissions before it to determine if summary judgment is appropriate. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *see also Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (where a summary judgment motion is unopposed, "there must be a finding that judgment for the moving party is appropriate").

## IV. DISCUSSION

Pennewell contends that the defendants violated § 1983 through their use of excessive force in arresting him on January 9, 2007. (D.I. 10.) The defendants, in their Motion for Summary Judgment, assert that: (1) Pennewell fails to establish the required elements of a §

4

1983 cause of action for use of excessive force (D.I. 45 at 7-10); (2) Pennewell has not demonstrated that the defendants—to the extent such a claim can be deduced from his Amended Complaint—conspired against him to violate his civil rights (id. at 14); and (3) even if Pennewell's claims can be established, the defendants are entitled to qualified immunity because their actions were reasonable under the circumstances[4] (id. at 15.) The court will examine the defendants' Motion for Summary Judgment below.

### A. Pennewell's Section 1983 Use of Excessive Force Claim

The defendants move for summary judgment, in the main, on the ground that Pennewell has offered no evidence that they used excessive force when they arrested him on January 9, 2007 and, therefore, that there is no genuine issue of material fact with respect to that issue. (D.I. 45 at 7-10.) To establish a § 1983 claim, a plaintiff must show: (1) that the conduct complained of was committed by a state actor; and (2) that the conduct in question deprived the plaintiff of a federally protected right. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). To make this showing, a plaintiff asserting a § 1983 violation must allege that the defendant actually participated in the wrongful conduct. *See Rizzo v. Goode*, 423 U.S. 362 (1976). A plaintiff can demonstrate participation or personal involvement through allegations that the state actor directed, had knowledge of, or acquiesced in effecting the constitutional deprivation. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

In this matter, Pennewell alleges that the defendants violated his constitutional rights and engaged in wrongful conduct by using excessive force during his arrest. (D.I. 2.) The factors relevant in assessing whether officers used excessive force are well-established and such claims are examined under a Fourth Amendment "reasonableness" standard. *See Kopec v. Tate*, 361

---

[4] Because the court concludes that Pennewell has failed to establish a § 1983 cause of action, it is unnecessary for the court to address the defendants' third argument as to whether the detectives here would be immune from suit and entitled to qualified immunity.

5

F.3d 772 (3d Cir. 2004). Specifically, in determining whether the challenged conduct constitutes use of excessive force, a court must evaluate the "objective reasonableness" of the conduct, considering "the severity of the crime at issue, 'whether the suspect poses an immediate threat to the safety of the officers and others, and whether [the individual] is actively resisting arrest or attempting to evade arrest by flight.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, [and] the possibility that the suspect may be armed." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Additionally, in assessing reasonableness, the court must take into consideration that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *See Graham*, 490 U.S. at 397. To this end, courts are directed to evaluate officers' actions in light of the circumstances at the time, rather than assess responses with the benefit of hindsight. *See Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (citation omitted)).

1. **Whether Genuine Issues of Material Fact Exist at this Stage**

Pennewell alleges that the detectives caused his facial injuries by beating him "to near death" after he was "ta[s]ed and unconscious." (D.I. 10 at 3.) Specifically, Pennewell states, as the entirety of the factual allegations alleged in his Amended Complaint, that:

> Upon receiving phone calls from a female requesting to meet, I go to the area of 300 Silver Run Trail to meet. A red caravan going extremely slow stopped within 15 ft. of me, and two occupants jumped out of each side. I heard "freeze New Castle County, get on the ground." I immediately put my hands in the air. The guy on my left held a yellow gun (later identified as Det. Grajewski) and the one on my right (later identified as Det. Grant) held a black gun. I was

6

> ta[s]ed right after putting my hands up, by Det. Grajewski, without ever resisting.
> . . .
> After being ta[s]ed and unconscious I was beaten by Det. Grant along with other officers, to near death. Also, sustaining permanent injuries to my face, three chipped teeth, and have mental issues having nightmares of the incident and receiving medication and treatment to deal with the issue. . . .
> Det. Botterbusch is one of the officers, along with Det. Grant, who beat me to near death, playing a part in my injuries I've received. (Id. at 3, 5.)

The above-quoted material from Pennewell's Amended Complaint represents the extent of his factual allegations and evidence, however, as he did not file a Response to the defendants' Motion for Summary Judgment and submitted incomplete interrogatory responses.[5]

Conversely, the defendants provide a markedly different version of the events Pennewell describes, and support their assertions with affidavits from Detectives Grant, Grajewski, Santos, and Tatum, an officer who responded with the other detectives, but was not named in the Complaint. (D.I. 45, Ex. 1-4.) These detectives also submitted individual police reports from the incident as affidavit attachments. (Id.) According to these submissions, the defendants state that they came into contact with Pennewell based on information from a confidential informant indicating that Pennewell, known by the street-name of "Wonka," was selling illegal narcotics in New Castle County. (Id. at 3.) Acting on this information, Detective Carter contacted Pennewell on the date of the alleged incident via cell phone, used a false name, and indicated that she was interested in purchasing crack cocaine. (Id. at 3; Ex. A.) Pennewell suggested that Detective Carter meet him near 300 Silver Run Trail, Bear, Delaware, and she responded that she would meet him there and would be driving a red or maroon-colored van. (Id.)

Detective Carter proceeded to that location with the other officers named in this action and called Pennewell as she arrived. (Id.) Pennewell indicated that he would move toward the vehicle when it came into view and did in fact do so. (Id.) Specifically, the defendants state that

---

[5] Pennewell also supplied the defendants with a witness list of five individuals. This list is discussed *infra*.

7

Pennewell approached the van and tapped on the front passenger window before noticing there were police officers in the backseat. (Id.) In their affidavits, the detectives state that they were able to positively identify Pennewell as the individual the confidential informant described and that, once Pennewell knocked on the van window and recognized their presence, they exited the vehicle and Detective Grajewski stated "New Castle County Police, do not move!" (Id. at 3; Ex. 1-4.)

Upon hearing Detective Grajewski's command, the defendants state that Pennewell began sprinting from the vehicle, at which time Detective Grajewski deployed his conductive energy weapon ("taser"). (Id. at 3; Ex. 1, 2.) Detective Grajewski states that he observed the taser probes strike Pennewell in the "middle area of his back." (D.I. 45, Ex. 2 at 4.) The defendants describe that Pennewell fell to the ground, was immediately handcuffed, and was then rolled in a "rescue position" to ensure that he could breathe properly before Detectives Grant, Santos, and Twigg began administering first aide. (D.I. 45, Ex. 1-4.) At this time, Detective Grant states that he observed a "plastic bag which contained an off-white rock like substance on the ground next to [Pennewell's] left hand," as well as a cell phone in the same vicinity. (D.I. 45, Ex. 1 at 6.) Detective Grant checked this cell phone and identified the last received telephone call as matching the number of the phone Detective Carter used to make contact with Pennewell that evening. (Id.)

The defendants further state that they observed that Pennewell suffered facial lacerations, including abrasions to the right of and under his right eye, which extended to his right cheek, as well as on his upper lip and under his nose, extending to the base of his chin. (D.I. 45, Ex. 2 at 5.) Pennewell was bleeding heavily from these injuries and was spitting blood. (Id.) Detective Grajewski noted that while Pennewell "initially was not alert or responsive to [the] officers

8

rendering aid," he began to speak once he was rolled into the rescue position and his breathing, airway, and circulation were monitored. (Id.) At first, Pennewell had difficulty answering basic questions regarding his identification, but soon provided his name and age. (Id.) The defendants maintain that Pennewell's facial injuries and initial confusion in answering basic questions resulted from his fall after he was tased. (Id.) Specifically, they state that because Pennewell started sprinting from them when they exited the vehicle, his momentum caused him to fall forward onto the pavement with greater force, injuring his face.[6] (Id.) Pennewell was subsequently taken to the Christiana Medical Center for treatment. (Id.)

In light of the foregoing, it appears that Pennewell would dispute the defendants' version of the events in question if he had responded to their Motion for Summary Judgment and Opening Brief in support thereto. Namely, it appears from Pennewell's Amended Complaint and limited interrogatory responses, that he would likely dispute: (1) the reason he was meeting Detective Carter the night of his arrest[7]; (2) whether he stopped when Detective Grajewski commanded that he do so; and (3) the cause of the injuries he sustained. (D.I. 10 at 3, 5.) After reviewing Pennewell's allegations and the evidentiary support offered to date, however, the court concludes that there are no genuine issues of material fact that would preclude it from ruling on the instant motion at this juncture. Specifically, and as the defendants correctly assert in their

---

[6] In his report, Detective Grajewski describes that the taser stopped Pennewell's "ability to flee," causing his body to "move from the position of a sprinter" to that of a person "standing at military attention." (D.I. 45, Ex. 2 at 5-6.) Pennewell continued "to travel forward," however, "due to his previously mention[ed] sprint to avoid apprehension." (Id. at 6.)

[7] Specifically, Pennewell responds in the negative to defendants' First Set of Requests for Admissions' question as to whether he was found in possession of crack cocaine when he was arrested. (D.I. 39 at 2.) Consequently, it appears that Pennewell may argue that he did not meet Detective Carter the night of his arrest to sell drugs. The court notes, however, that this assertion, if Pennewell had chosen to make it, is unsubstantiated, as the police recovered the crack cocaine from the vicinity in which Pennewell fell and, further, confirmed that the most recent phone call in Pennewell's phone was from Detective Carter's cell phone number. As a result, to the extent that Pennewell may have asserted this argument, the court finds that it is not confirmed by independent evidence and, therefore, represents a "bare assertion" unsupported by the record and insufficient to raise a genuine issue of material fact.

9

Opening Brief, Pennewell has failed to offer any evidentiary support for the allegations set forth in his Amended Complaint. (D.I. 45.)

Rather, Pennewell's factual support for the claim alleged in his Amended Complaint consists, in its entirety, of incomplete interrogatory responses and a witness list. With regard to the former, Pennewell's interrogatory responses are largely incomplete and are devoid of evidentiary support for his assertion that the defendants used excessive force. (D.I. 45, Ex. 5; D.I. 34.) Pennewell simply asserts in his responses that he is unable to provide additional detail or substantiate his claims because, due to his incarceration, he does not have the information available[8] and will not be able to access this information until after his release. (D.I. 34.) Pennewell, however, was released from incarceration to home confinement on June 29, 2011, nearly two weeks before the filing of the defendants' instant motion and, nevertheless, has failed to supplement his discovery responses or respond to this motion even when ordered to do so by this court. (D.I. 49.) Similarly, the witness list Pennewell submitted to the defendants does not substantiate his action or lend factual support to this claim. Specifically, the defendants' attorney, Harshal Purohit-Patel, filed an affidavit with the court in connection with the instant motion indicating that she attempted, without success, to contact the five witnesses Pennewell identified in his discovery responses. (D.I. 45, Ex. 5, 6.) Purhoit-Patel states that Pennewell's witnesses either had telephone numbers that were not in service or indicated that they did not observe Pennewell's arrest and, therefore, would have no relevant testimony.[9] (Id. at Ex. 6.)

---

[8] Pennewell states that he has an audiotape that, as of the day he responded to the defendants' interrogatories, January 4, 2011, was in his family's possession. (D.I. 45, Ex. 5.) Pennewell also asserts that he has written statements from witnesses recorded by "people helping [him]." (Id.)

[9] Specifically, Purhoit-Patel states that she "attempted to contact each witness" Pennewell listed as part of his discovery requests, from April through July of 2011. (D.I. 45, Ex. 6.) Of the five witnesses listed, two had telephone numbers that were not in service and another witness' telephone was not in service and the address Pennewell provided was a vacant lot. (Id.) Moreover, Purhoit-Patel states that while she was able to successfully contact two witnesses, both did not know Pennewell and did not witness his arrest on January 9, 2007. (Id.) These

Finally, the court notes generally that Pennewell's Amended Complaint allegations fail, standing alone, to raise a genuine issue as to a material fact in question. Specifically, and as quoted above, Pennewell alleges that, "after being tased and unconscious," he was "beaten by Det[ective] Grant along with other officers, to near death." (D.I. 2 at 3.) Pennewell has not provided any support for this allegation—the central allegation of his Amended Complaint—and instead merely alleges that, while he was unconscious, the detectives named in this action "beat" him and caused the facial lacerations and bruises he suffered during his arrest. (Id.) As the Supreme Court and Third Circuit have made clear, however, a plaintiff cannot, as Pennewell attempts to do here with his Amended Complaint, survive a motion for summary judgment by raising "bare assertions, conclusory allegations[,] or suspicions" to "show the existence of a genuine issue," without identifying or citing to factual evidentiary support. *See Podobnik*, 409 F.3d at 594 (quoting *Celotex Corp.*, 477 U.S. at 325)). Instead, where the nonmoving party fails to establish an essential element of his or her case, summary judgment is appropriate. *See Celotex Corp.*, 477 U.S. at 322.

In view of the foregoing, the court concludes that Pennewell has failed to present evidence sufficient to show a genuine issue of material fact for trial. Consequently, the court agrees with the defendants that the facts relevant to deciding this matter are not in dispute. *See Anderson*, 47 U.S. at 249 (directing that the nonmoving party must present enough evidence to enable a jury to reasonably find for it on the issue in question).

### 2. Whether the Defendants are Entitled to Judgment as a Matter of Law

Having determined that there are no genuine issues of material fact relevant to the § 1983 action, the court next evaluates whether the defendants are entitled to judgment as a matter of

---

witnesses did indicate that they saw the police officers after Pennewell as arrested but did not want to submit an affidavit because they did not witness the arrest and did not want to get involved. (Id.)

law on this claim. In consideration of the defendants' motion, the parties' pleadings and submissions, and the relevant law, the court concludes, for the reasons outlined below, that the defendants are entitled to this judgment.

As noted, a plaintiff alleging a § 1983 excessive force claim is required to show that the arresting officer: (1) was a state actor; and (2) engaged in conduct that deprived the plaintiff of a federally protected right. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). In the excessive force context, the court must then consider whether the officer's conduct was "objective[ly] reasonable[]" considering the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempt to evade arrest by flight." *Couden v. Duffy*, 446 F.3d 483, 496-97 (citing *Carswell*, 381 F.3d at 235).

Here, Pennewell has failed to establish the "wrongful conduct" element of his § 1983 claim because he has not demonstrated—aside from his bare and conclusory allegations—that the detectives used excessive force or acted in a way that was objectively unreasonable in light of the circumstances. Instead, and as discussed in the preceding section, Pennewell simply alleges that he was tased after putting his hands up in response to the detectives' command to stop and that the detectives beat him while he was unconscious. (D.I. 10 at 3, 5.) The defendants' police reports and sworn affidavits, however, indicate that Pennewell was arrested in connection with a drug transaction he arranged with Detective Carter and was tased when he began to "sprint" after the detectives opened the doors of the minivan and commanded that he stop. (D.I. 45, Ex. 1-4.) Specifically, these reports and affidavits state that: (1) the defendants began investigating Pennewell after receiving information from a trusted, confidential informant that Pennewell was involved in drug activity; (2) the Drug Control Unit responded to the area of Silver Trail on

January 9, 2007 to purchase the crack cocaine Pennewell agreed to sell Detective Carter; (3) Detective Carter told Pennewell the color of the vehicle she would be driving and Pennewell began moving toward the vehicle when he saw it enter the Silver Trail area; (4) the defendants positively identified Pennewell as the individual the confidential informant described; and (5) Detective Grajewski ordered Pennewell to stop when Pennewell recognized that there were officers in the vehicle and, ultimately, deployed his taser when Pennewell did not comply with his command. (Id.) Moreover, the detectives also gave statements indicating that Pennewell had injured his face when he fell to the ground after being tased. (Id.)

In view of the facts of this case, the court finds that the defendants' actions did not amount to the use of excessive force. Specifically, Detective Grajewski deployed his taser in circumstances in which Pennewell was identified as an individual engaged in drug activity, was meeting Detective Carter to consummate a drug transaction, and began to flee upon seeing the officers. Moreover, after the Detective Grajewski tased Pennewell, the defendants immediately handcuffed him and began administering first aid. In light of these circumstances—namely, Pennewell's flight and participation in illegal activity—the court concludes that a jury could not reasonably find that the defendants' conduct was objectively unreasonable and, thus, could not conclude that Pennewell was subjected to excessive force. Consequently, because the court concludes that the defendants did not engage in wrongful conduct, Pennewell is unable to establish his § 1983 cause of action.

### B. Pennewell's Conspiracy Claim

As noted, the defendants also contend that, to the extent that Pennewell's Amended Complaint can be read to include a claim that the defendants conspired to deprive him of his

13

constitutionally protected right(s),[10] Pennewell has failed to establish the elements required of this cause of action. To establish a claim based on 42 U.S.C. § 1985, a plaintiff must demonstrate:

> (1) a conspiracy; (2) motived by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of laws; (3) an act in furtherance of conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *United States Bd. of Carpenters and Joiners of Am., Local 610*, 463 U.S. 825, 828-29 (1983)). Moreover, to establish this claim the plaintiff must plead these elements with "specificity," such that "broad, conclusory allegations of [] a conspiracy, or to show merely that the defendants had a common goal or acted in concert" is not enough. *See* 42 U.S.C. § 1985(3); *see also Martin v. Delaware Law School of Widener Univ.*, 625 F. Supp. 1288, 1297 (D. Del. 1985), *aff'd*, 884 F.2d 1384 (3d Cir. 1989). To this end, a plaintiff must "show through specific facts that the defendant reached an understanding or agreement to violate plaintiff's federally created rights." *Martin*, 625 F. Supp. at 1297 (citing *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982)).

Here, Pennewell has failed to allege or to provide evidence that the defendants acted in concert or conspired to deprive him of a constitutionally protected right.[11] Consequently, the court concludes that, to the extent that Pennewell alleged a conspiracy claim in his Amended Complaint, he has failed to demonstrate the elements of this cause of action.

---

[10] Specifically, the defendants note in their Opening Brief that it is possible, based on the nature of Pennewell's allegations, that he is alleging the defendants "conspired against him to violate his civil rights in violation of 42 U.S.C. §§ 1985 and 1986. (D.I. 45 at 10.)

[11] As noted above, while Pennewell does allege that "Det[ective] Grant along with other officers" beat him "to near death," he does not assert, beyond this statement, that the defendants conspired or otherwise acted in concert during his arrest. (D.I. 10.) Likewise, he does not allege that the defendants were "motived by a racial or class based discriminatory animus." *See Lake*, 112 F.3d at 685.

## V. CONCLUSION

For the foregoing reasons, the court will grant the defendants' Motion for Summary Judgment. (D.I. 44.)

Dated: February 7, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM PENNEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-cv-21 (GMS) |
| | ) | |
| DETECTIVE GRANT, DETECTIVE | ) | |
| GRAJEWSKI, DETECTIVE SANTOS, and | ) | |
| DETECTIVE BOTTERBUSCH, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendants' Motion for Summary Judgment (D.I. 44) is GRANTED; and

2. The Clerk of Court is directed to close this case.

Dated: February 7, 2012

_____
CHIEF, UNITED STATES DISTRICT JUDGE